## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRIENDS OF ANIMALS, ) | | |
| 777 Post Road, Suite 205 ) | Civ. No. _____ | |
| Darien, CT 06820; and ) | | |
| ) | | |
| WILDEARTH GUARDIANS, ) | | |
| 2590 Walnut Street ) | | |
| Denver, CO 80205 ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| PENNY PRITZKER, in her official ) | | |
| capacity as the Secretary of Commerce, ) | | |
| U.S. Department of Commerce ) | | |
| 1401 Constitution Ave., NW ) | | |
| Washington, D.C. 20230; and ) | | |
| ) | | |
| NATIONAL OCEANIC AND ) | | |
| ATMOSPHERIC ADMINISTRATION, an ) | | |
| agency of the United States ) | | |
| 1401 Constitution Avenue, NW ) | | |
| Washington, DC 20230 ) | | |
| ) | | |
| Defendants. ) | | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1. Plaintiffs Friends of Animals and WildEarth Guardians bring this action against Defendant Penny Pritzker, in her official capacity as the Secretary of Commerce and the National Oceanic and Atmospheric Administration (collectively, "NOAA"), for the decision not to list the queen conch as threatened or endangered under the Endangered Species Act (ESA). *See* 79 Fed. Reg. 65,628, Endangered and Threatened Wildlife and Plants: Notice of 12-Month Finding on a Petition To List the Queen Conch as Threatened or Endangered Under the Endangered Species Act (Nov. 5, 2014) (hereinafter, "Not Warranted Finding").

2. Defendants failed to list the queen conch as a threatened or endangered species despite the overwhelming evidence, including the assessment of the Defendants' own group of experts, that the species is at risk of extinction.

3. Defendants' Not Warranted Finding violated the ESA and is arbitrary, capricious and contrary to law within the meaning of the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 701-706. Defendants' failure to fulfill their duties under the ESA places queen conch in further peril, subjecting them to human exploitation and possible extinction.

4. To remedy the Defendants' violations of law, Friends of Animals and WildEarth Guardians seek declaratory and injunctive relief reversing and remanding the Not Warranted Finding and directing Defendants to proceed with the ESA listing process for the queen conch.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (U.S. as a defendant), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen suit provision), and the APA, 5 U.S.C. §§ 701-706.

6. This Court has authority to grant Plaintiffs' requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), 5 U.S.C. §§ 701-706 (APA), and 16 U.S.C. § 1540(g) (ESA).

7. Pursuant to the ESA citizens suit provision, Friends of Animals and WildEarth Guardians sent Defendants notice of its intent to sue ("Notice") on February 3, 2016. *See* 16 U.S.C. § 1540(g)(2).

8. Defendants received Plaintiffs' Notice on February 8, 2016.

9. More than sixty (60) days have passed since Defendants received Friends of Animals' and WildEarth Guardians' Notice.

10. Defendants have not remedied the violations of the ESA. Therefore, an actual controversy exists between the parties. *See id.*

11. Venue is proper in this Court pursuant to the ESA, 16 U.S.C. § 1540(g)(3)(A), and 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district, and Defendants maintain offices within this district.

**PARTIES**

12. Plaintiff, Friends of Animals, is a not-for-profit international advocacy organization incorporated in the state of New York since 1957. Friends of Animals seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living and domestic animals. Friends of Animals engages in a variety of advocacy programs in support of these goals. Friends of Animals informs its members about animal advocacy issues as well as the organization's progress in addressing these issues through its magazine called Act'ionLine, its website, and other reports. Friends of Animals has published articles and information advocating for the protection of species so that they can live unfettered in their natural habitats. In the absence of proper protection under the ESA, queen conch are subject to mounting pressures from habitat destruction and rampant poaching. Friends of Animals' members and staff are injured by Defendants' failure to list the queen conch under the ESA.

13. Plaintiff, WildEarth Guardians ("Guardians"), is a not-for-profit conservation organization incorporated in the state of New Mexico since 1989, with offices in New Mexico, Arizona, Colorado, Montana, Oregon, California, and Wyoming. Guardians protects and restores the wildlife, wild places, wild rivers, and the health of the American West. Guardians advocates for imperiled species to receive the strong legal protections of the ESA. Through our "Wild Oceans" campaign, we have launched an effort to list imperiled marine species under the ESA in order to stem the extinction crisis in the oceans brought on by human exploitation, habitat destruction, and climate change. In the absence of proper

3

protection under the ESA, queen conch continues to decline due to myriad human-caused threats. Guardians' members and staff are injured by Defendants' failure to list the queen conch under the ESA.

14. Plaintiffs sue on behalf of themselves and on behalf of their adversely affected members. Plaintiffs have invested time and resources to protecting queen conch, including advocating for the conservation of the species, and for listing queen conch as threatened or endangered under the ESA. In addition, Plaintiffs work to educate their members and the public about the status of the species and threats it faces.

15. Plaintiffs have members that live near or frequently visit queen conch habitat. These members regularly search for and observe queen conch and their shells. They derive scientific, recreational, educational, conservation, and aesthetic benefits from the existence, observation, and study of queen conch.

16. The aesthetic, recreational, scientific, educational, and other interests of the Plaintiffs and their members have been, are being, and, unless the relief prayed for is granted, will continue to be adversely and irreparably injured by Defendants' Not Warranted Finding and refusal to list the queen conch as an endangered or threatened species under the ESA. These are actual, concrete injuries to Plaintiffs, caused by Defendants' failure to comply with the ESA and its implementing regulations and policies. These injuries would be redressed by the relief requested in this complaint.

17. Defendant Penny Pritzker, in her official capacity as Secretary of Commerce, has ultimate responsibility for implementation of the ESA with respect to marine species such as the queen conch. The Secretary is also responsible for the actions of her delegate the National Oceanic and Atmospheric Administration Fisheries, including that delegate's Not Warranted Finding.

18. Defendant National Oceanic and Atmospheric Administration, also known as the United States National Marine Fisheries Service, is an agency of the United States within

the Department of Commerce. The National Oceanic and Atmospheric Administration is responsible for complying with all federal laws, including the ESA. [1]

## STATUTORY AND REGULATORY FRAMEWORK OF THE ENDANGERED SPECIES ACT

19.     The purpose of the ESA is to conserve endangered and threatened species and the ecosystems upon which these species depend.  16 U.S.C. § 1531(b).

20.     The listing process is the essential first step in the ESA's system of species protection and recovery. Before the ESA can protect a species facing extinction or that species' habitat, the species must be listed as either endangered or threatened. 16 U.S.C. § 1533(d). A species is endangered if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is threatened if it is "likely to become an endangered species within the foreseeable future." 16 U.S.C. § 1532(20).

21.     The Secretary must list a species if it is threatened or endangered due to any one or a combination of the following factors:

> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory mechanisms; or
> (E) other natural or manmade factors affecting its continued existence.

16  U.S.C. § 1533(a)(1).

22.     The Secretary's decision whether to list a species is limited solely to consideration of these five factors. In considering these factors, the Secretary must use only "the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." 50 C.F.R. § 424.11(b); 16 U.S.C. § 1533(b)(1)(A).

---

[1] Hereinafter the term "NOAA" shall be used to refer to the Secretary of Commerce and her delegate the National Oceanic and Atmospheric Administration.

23. Any interested person can begin the listing process by filing a petition to list a species with the Secretary. 16 U.S.C. § 1533(b)(3)(A).

24. Upon receipt of a petition to list a species, the Secretary is required to make an initial finding known as a "ninety-day finding." Specifically, within ninety days of receipt, "to the maximum extent practicable," the Secretary must determine whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A).

25. If the Secretary finds that the petition does not present substantial information indicating that the listing may be warranted, the petition is rejected and the process ends. This is known as a "negative" ninety-day finding. This finding is subject to judicial review in a U.S. District Court. *See* 16 U.S.C. §§ 1540(c), (g).

26. If the Secretary finds that the petition presents substantial information indicating that listing may be warranted, the Secretary must then commence a status review of the species. 16 U.S.C. § 1533(b)(3)(B). This is known as a "positive" ninety-day finding. 16 U.S.C. § 1533(b)(3)(A).

27. During the status review, the Secretary should: (1) compile the best available information; (2) identify distinct population segments as appropriate; (3) conduct a risk assessment to assess the level of extinction risk throughout all or a significant portion of a species' range; and (4) document conclusions in a Status Review Report.

28. Compilation of the best available data should precede the risk assessment. The risk assessment should synthesize all available information regarding the ESA listing factors and develop an estimated risk of extinction through the foreseeable future.

29. The risk assessment should:

> provide a description of methods for the risk analysis that was conducted, including evaluations of risk based on specific demographic factors (e.g., population abundance and trends, productivity, spatial structure, age structure, sex ratio, diversity, current and historical range, habitat integrity or fragmentation), any quantitative or qualitative estimates of overall extinction

> risk for the species, and the relative contribution of identified demographic risks to the overall assessed level of extinction risk. The demographic analysis is an assessment of the biological response or manifestation of past factors for decline and present threats.

NOAA, Guidance on Conducting Status Reviews Under the Endangered Species Act (May 24, 2013) at 8.

30. To ensure quality information and transparency in the decision making process, the risk assessment and status report should follow certain procedures including peer review.

31. If a positive ninety-day finding is made, the Secretary has twelve months from the date the petition was received to make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted, but presently precluded by other pending proposals to list species of higher priority, provided that the Secretary is making expeditious progress in listing other species. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(b)(3). This second finding is known as a "twelve-month finding" and must be published in the Federal Register.

32. The Secretary must ultimately list the species under the ESA if she determines that the species is endangered or threatened because of any one or a combination of the five listing factors. 50 C.F.R. § 424.11 (c).

33. The Secretary must base her decision whether to list the species solely on the best available scientific and commercial data. 16 U.S.C. § 1533(b).

34. The information relied on for the final listing decision should be peer reviewed. 59 Fed. Reg. 34,270 (July 1, 1994).

35. The decision to not list a species is subject to judicial review. 16 U.S.C. § 1533(b)(3)(C)(ii).

36. If the Secretary finds the listing of the species is warranted, she must publish a proposed rule for public comment to list such species as either endangered or threatened in the Federal Register. 16 U.S.C. § 1533(b)(5).

37.     The final listing decision for the species must be made within one year of the publication of a proposed rule to list a species. 16 U.S.C. § 1533(b)(6)(A).

38.     Once a species is listed, the ESA provides strong legal protection to encourage the species' recovery. The ESA requires the Secretary to designate critical habitat for all threatened and endangered species concurrently with their listing and subsequently develop recovery plans for such species. 16 U.S.C. §§ 1533(a)(3), (f).

39.     The ESA also requires that all federal agencies "carry out programs for the conservation" of threatened and endangered species and consult with the Secretary in order to ensure that their actions are "not likely to jeopardize the continued existence" of such species or "result in the destruction or adverse modification" of their critical habitat. 16 U.S.C. §§ 1536(a)(1), (2). Moreover, it becomes unlawful for any person to "take" a listed species unless pursuant to a special rule or permit issued by the Secretary. 16 U.S.C. §§ 1538, 1539.[2]

**FACTS GIVING RISE TO PLAINTIFFS' CLAIMS**

A. **Petition to List the Queen Conch**

40.     On February 27, 2012, WildEarth Guardians submitted a petition to Defendants to list the queen conch as threatened or endangered under the ESA (hereinafter, "Petition").

B. **Threats to Queen Conch**

41.     The queen conch is a large gastropod mollusk characterized by its spiral-shaped shell and distinctive pink aperture. The queen conch's habitat and behavioral characteristics make it particularly vulnerable to exploitation because it is slow moving, easily identifiable, and often gathers in large aggregations in shallow water. As laid out in the Petition, the queen conch's habitat is threatened by water pollution, degradation of

---

[2] The term "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

seagrass beds, and the destruction of essential nursery areas. The species is also threatened by the harvest of conch meat for sale in growing local and international markets. Existing regulatory mechanisms are inadequate to protect the queen conch. Finally, queen conch are particularly biologically vulnerable to human exploitation; the low adult densities resulting from exploitation limit queen conch population recovery. Human population growth will only exacerbate current threats to the species.

### C. Positive Ninety-Day Finding and Status Review.

42. On August 27, 2012, NOAA published a ninety-day finding with its determination that the Petition presented substantial scientific and commercial information indicating that the petitioned action may be warranted.

43. Based on information NOAA received in response to the positive ninety-day finding, as well as other relevant information, it created a status report on the queen conch. Then, NOAA assembled a group with expertise in marine mollusk biology, ecology, population dynamics, ESA-policy, and fisheries management (the "Extinction Risk Analysis," or "ERA" group) to conduct a threats assessment based on the status report. NOAA asked each group member to independently assess the risk level of various threats to the queen conch.

44. The ERA group was asked to rank each threat among the following categories: "very high risk" the highest risk ranking used to indicate danger of extinction in the near future; "increasing risk" the next highest ranking which indicated that the risk of extinction is likely to increase to high risk in the foreseeable future (defined by NOAA as fifteen years) if present conditions continue; "moderate risk" to indicate that the threat contributes significantly to long-term risk of extinction, but does not constitute a danger of extinction in the near future; "low risk" to indicate the threat may affect the species' status, but only to a degree that is unlikely to significantly elevate the risk of extinction; and "unknown." The ERA group members were asked to rank each threat by allocating five

points to the risk category or categories that he or she determined was appropriate. Thus, if the ERA group member was certain that a threat constituted a high threat she would allocate all five points to the high threat category. If the threat was between a moderate to increasing threat she could split up the five points between those categories.

45.     Experts in the ERA allocated the majority of their points to rank several threats as either very high risks that indicated danger of extinction in the near future or increasing risks that are likely to indicate a danger of extinction for the entire species within fifteen years, including: commercial harvest, inadequate law enforcement, the allee effect, foreign countries' regulations, life history traits, and international trade regulations.

46.     NOAA did not ask the ERA group to evaluate the cumulative effects of the threats, the contribution of each threat to the overall extinction risk, or the overall extinction risk.

47.     NOAA ignored input from the experts regarding what should constitute the foreseeable future and a significant portion of the queen conch's range.

**D. The Challenged Not Warranted Finding.**

48.     On November 15, 2014, NOAA published notice of its Not Warranted Finding, refusing to list the queen conch as threatened or endangered under the ESA. 79 Fed. Reg. 65,628.

49.     NOAA did not explain why its decision in the Not Warranted Finding departed from the conclusions of the ERA group.

50.     NOAA failed to establish an existing level of risk based upon current queen conch density levels.

51.     NOAA failed to assess or disclose the queen conch's overall extinction risk.

52.     NOAA failed to discuss the cumulative effects of threats to the queen conch.

53.     NOAA failed to provide an assessment regarding the contribution of each identified risk to the queen conch's overall extinction risk.


54. NOAA failed to provide **any** quantitative or qualitative assessments or estimates of the overall extinction risk for the queen conch.

55. NOAA improperly limited the foreseeable future analysis to an absolute time period, fifteen years, based on three queen conch generations.

56. NOAA failed to properly consider whether the queen conch is endangered or threatened in a significant portion of its range.

57. Over 85% of the queen conch's range contains populations that are or may be below a critical threshold for reproduction.

58. NOAA never considered whether the 85% of the queen conch range with population that may be below the critical threshold constituted a significant portion of the queen conch's range.

59. NOAA never analyzed whether the species would be in danger of extinction, or likely to become so in the foreseeable future, without that 85% of the species' range.

60. NOAA failed to articulate a rational connection between the best available evidence on queen conch threats and its Not Warranted Finding.

61. NOAA did not base its decision on the best available science that indicates the queen conch is endangered or threatened due to present or threatened destruction, modification, or curtailment of its habitat or range.

62. NOAA's own conclusions, as well as the conclusion of the ERA group, indicated the present or threatened destruction, modification, or curtailment of the queen conch's habitat or range threaten the species.

63. NOAA's Not Warranted Finding runs counter to the evidence, and to its own findings about the risks from habitat loss and destruction. NOAA offered **no** explanation for why its decision departed from the facts described in its finding.

64. The best available science indicates that queen conch is endangered or threatened due to overutilization for commercial, recreational, scientific, or educational purposes.

65. The ERA group found that the threat posed by overutilization is an increasing risk, likely to increase to high risk of extinction within fifteen years for the entire species if present conditions continue.

66. NOAA found that overutilization for commercial purposes was a significant threat to the species.

67. NOAA's Status Report indicates that both fishing pressure and exports have increased over the past two decades resulting in diminishing queen conch population density across its range.

68. NOAA's Not Warranted Finding runs counter to the evidence, and to its own findings about the threat of overutilization. NOAA offered **no** explanation for why its decision departed from the facts described in its finding.

69. The best available scientific and commercial evidence demonstrates that the queen conch is endangered or threatened due to the inadequacy of existing regulatory mechanisms.

70. The ERA group's ranking indicated that international trade regulations, existing fishery regulations in foreign countries, and lack of regulatory enforcement are significant threats that indicate extinction risk in the foreseeable or near future for the queen conch.

71. NOAA concluded that the inadequacy of existing regulatory mechanisms is a significant threat to queen conch.

72. NOAA's Not Warranted Finding runs counter to the evidence, and to its own findings about the risk of extinction from inadequate regulatory mechanisms.

73. NOAA failed to articulate a satisfactory explanation for its final determination that the queen conch does not warrant listing as threatened or endangered because of inadequate existing regulatory mechanisms.

74. The best available scientific and commercial evidence demonstrate that the queen conch is endangered or threatened due to other natural or manmade factors affecting its continued existence.

75. The queen conch's behavioral and biological characteristics (e.g., slow growth, late maturation, limited mobility, occurrence in shallow waters, and tendency to aggregate) render the species particularly vulnerable to overharvest, and the viability of the population is reduced as population density decreases.

76. Research has shown that there is a density-dependent effect on reproduction, with low densities inhibiting reproduction, and potentially causing a decline in queen conch recruitment. At density levels less than a critical threshold, conch mating will not occur at the frequency needed to sustain the population, which can lead to recruitment failure and population collapse; this is known as an allee effect.

77. The ERA group ranked the allee effect as an "increasing risk" which will lead to the danger of extinction throughout the species' entire range in fifteen years if present conditions continue.

78. The best available conch density data support the ERA group's finding and indicate that a large portion of queen conch populations are well below or now within the range where negative population growth or recruitment failure is a significant risk.

79. NOAA failed to articulate a satisfactory explanation for its final determination that the queen conch does not warrant listing as threatened or endangered based on factors such as queen conchs' biological characteristics and the allee affect.

80. NOAA used an inappropriate standard for determining whether the queen conch was threatened or endangered.

81. NOAA failed to rely on a consistent and valid definition of threatened and endangered in its Not Warranted Finding.

82. NOAA did not base its Not Warranted Finding on whether the queen conch is in danger of extinction throughout all or a significant portion of its range, or likely to become so in the foreseeable future.

83. NOAA arbitrarily undervalued superior scientific density surveys merely because they appear inconsistent with recent reported landings, which are less reliable and a scientifically inferior predictor of the species' status.

84. NOAA provided no explanation and/or examination for why it disregarded the best available data regarding queen conch densities.

85. NOAA provided no reasonable justification for its assertion that the landing data alone renders the information pertaining to density unreliable.

86. NOAA relied on assessments, including a "sustainability index," submitted from the Southeast Fisheries Science Center and NOAA's Southeast Region's Sustainable Fisheries Division to make its Not Warranted Decision.

87. NOAA did not include assessments, including the sustainability index, submitted from the Southeast Fisheries Science Center in the queen conch status review, nor did it make this information available to the ERA group or the public. This information was not peer reviewed, nor did NOAA analyze how this information affected the ERA group's threats analysis.

88. Information from the Southeast Fisheries Science Center and NOAA's Southeast Region's Sustainable Fisheries Division, including the sustainability index, was not the best available scientific or commercial data available.

## CLAIM FOR RELIEF
**(Defendants' Not Warranted Finding Violates the Endangered Species Act and is Otherwise Arbitrary and Capricious)**

89. Plaintiffs herein incorporate all information and allegations contained in the preceding paragraphs.

90. The Defendants' Not Warranted Finding: (1) applies the wrong legal and

scientific methodologies, including the failure to establish the baseline risks to the species, the failure to disclose the overall extinction risk, improper reliance on the sustainability index, and the improper applications of "foreseeable future" and "significant portion of its range"; (2) is not based on the best available science; (3) is contrary to the evidence; (4) applies an incorrect definition of threatened and endangered species; and (5) is otherwise arbitrary, capricious, and contrary to law in violation of the ESA within the meaning of the APA. 16 U.S.C. § 1533(b); 5 U.S.C. §§ 701-706.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA and APA by issuing an unlawful Not Warranted Finding on the queen conch.

2. Order Defendants to withdraw the unlawful Not Warranted Finding and issue a new finding within sixty (60) days;

3. Award Plaintiffs' costs, including reasonable attorney fees pursuant to the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Grant Plaintiffs such other relief as the Court deems just and proper.


Dated: July 27, 2016                                        Respectfully Submitted,


/s/ Michael Harris                                          /s/ Jennifer Best
Michael Ray Harris (DC Bar # CO0049)                        Jennifer Barnes (DC Bar # CO0056)
Director                                                    Assistant Legal Director
Friends of Animals                                          Friends of Animals
Wildlife Law Program                                        Wildlife Law Program
7500 E. Arapahoe Rd., Suite 385                             7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112                                        Centennial, CO 80112
Tel: 720.949.7791                                           Tel: 720.949.7791
Fax: 888.236.3303                                           Fax: 888.236.3303
michaelharris@friendsofanimals.org                          jennifer@friendsofanimals.org